IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VICKIE T.,<br><br>                Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of<br>Social Security,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 4:25-cv-0002-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits.[1] The Court affirms the administrative ruling.

## I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 10.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

On September 8, 2022, Plaintiff applied for disability insurance benefits, alleging disability beginning on February 14, 2019.[8] The claim was denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on October 17, 2023.[11] On November 13, 2023, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on November 15, 2024,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[14]

On January 8, 2025, Plaintiff filed her complaint in this case.[15] On that same day, both parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 191–99.

[9] *Id*. at 106–10, 112–16.

[10] *Id*. at 117–18.

[11] *Id.* at 39–63.

[12] *Id.* at 7–31.

[13] *Id.* at 1–6.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on March 5, 2025.[17]

Plaintiff filed her Opening Brief on April 4, 2025.[18] The Commissioner's Answer Brief was filed on June 4, 2025.[19] Plaintiff's Reply was filed on June 18, 2025.[20]

B.    MEDICAL EVIDENCE

Plaintiff suffers from a number of physical impairments. In August 2019, Plaintiff was seen for edema and peripheral neuropathy in her lower legs.[21] Plaintiff had been traveling and found that standing in lines was painful for her feet and legs.[22] A physical exam revealed that Plaintiff had normal range of motion and strength and no tenderness, but Plaintiff had 1+ pitting edema in the bilateral lower extremities.[23] Based on these findings, Plaintiff was encouraged to wear compression socks and to walk daily.[24] In September 2019, Plaintiff stated that she had purchased compression socks and would start wearing them for her edema.[25] Her physical exam showed normal range of motion and strength with no tenderness or edema.[26]

---

[16] Docket No. 5.

[17] Docket No. 9.

[18] Docket No. 10.

[19] Docket No. 14.

[20] Docket No. 15.

[21] R. at 502.

[22] *Id*.

[23] *Id*. at 503.

[24] *Id*. at 501.

[25] *Id*. at 497.

[26] *Id*. at 498.

In September 2020, Plaintiff was treated for osteoarthritis in both knees.[27] Plaintiff reported a crunching feeling within the knees when she walked.[28] The treating physician noted that Plaintiff was not in acute distress and that her musculoskeletal range of motion was good.[29] Plaintiff received injections, though she claimed they had given minimal relief in the past.[30] Plaintiff was also treated for neuropathy, reporting burning, numbness, and sharp pain in both of her feet.[31] In October 2020, Plaintiff reported that her feet felt numb and as if they were on fire, but Plaintiff also reported that the burning, sharp pain was not as bad as it had been.[32] She stated that taking Metanex seemed to help.[33] Her vibratory perception and light touch sensation were diminished bilaterally, and her protective sensation was found to be diminished using the Semmes-Weinstein Monofilament test.[34] Plaintiff was instructed to wear supportive shoe gear and to inspect her feet daily.[35]

In October 2020, a lung study showed a mild obstructive defect and increased lung volumes.[36] Plaintiff presented with dyspnea and apneic events.[37] The treating physician noted no

---

[27] *Id*. at 327–30.

[28] *Id*. at 330.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 353–56.

[32] *Id*. at 350.

[33] *Id*.

[34] *Id*. at 351.

[35] *Id*. at 352.

[36] *Id*. at 402.

[37] *Id*. at 369.

edema.[38] Plaintiff's movements were described as uncoordinated such that there was some fall risk but, overall, Plaintiff's gait was within normal limits.[39]

In February 2021, Plaintiff had no swelling to any extremity, and her strength was symmetrical in all extremities.[40] A home sleep test showed severe obstructive sleep apnea and significant hypoxemia.[41] Imaging of the left knee found decreased bone density, soft issue swelling in the upper lift shin, and joint space narrowing and productive change in all three compartments of the knees consistent with moderate to severe osteoarthritis.[42] Imaging of the right knee found decreased bone density, narrowing and productive change in all three compartments of the knee consistent with moderate to severe osteoarthritis, and trace knee effusion.[43] In assessing the images, the radiologist reported moderate to severe osteoarthritis of both knees and no evidence of acute bony pathology.[44] Imaging of Plaintiff's lumbar spine found decreased bone density, levoscoliosis centered at L3; disc height loss at L2-L3, L3-L4, L4-L5, and L5-S1; and grade 1 anterolisthesis of L4 on L5 measures 2mm.[45] The radiologist reported multilevel degenerative change and no evidence of acute bony pathology.[46]

---

[38] *Id*. at 372.

[39] *Id*.

[40] *Id*. at 476.

[41] *Id*. at 405.

[42] *Id*. at 358.

[43] *Id*.

[44] *Id*.

[45] *Id*. at 360.

[46] *Id*.

Plaintiff also received an independent medical examination from Matthew Call, DO ("Dr. Call") in February 2021.[47] Plaintiff reported to Dr. Call that she could not stand for more than a few minutes without knee pain; that she could hear grinding upon standing; that her knees would lock if she stood too long, causing a loss of balance; and that walking caused knee pain.[48] Plaintiff also reported that she could only walk for a short distance before feeling out of breath.[49] Dr. Call observed that Plaintiff appeared comfortable while seated and without pain mitigating mannerisms, that Plaintiff arose spontaneously and unaided from a seated position, that Plaintiff did not appear uncomfortable getting on and off the examination table, and that Plaintiff mobilized unaided throughout the exam with adequate effort and no distinct inconsistencies.[50] Regarding Plaintiff's extremities, Dr. Call found no cyanosis, clubbing, varicosities, or lower extremity edema.[51] Plaintiff's extremities were of normal color and warmth, and they lacked lesions or signs of infection.[52] Regarding Plaintiff's coordination, Dr. Call found the Romberg was negative; that Plaintiff's finger-nose was accurate on both sides; that Plaintiff walked heel and toe symmetrically; and that Plaintiff's gait was wide and slow but symmetric and without distinct ataxic or neurogenic phases.[53] Dr. Call noted that Plaintiff brought a cane but did not use it during the exam.[54] In examining Plaintiff's knee joints, Dr. Call found that there was mild

---

[47] *Id*. at 361–68.

[48] *Id*. at 361.

[49] *Id*. at 362.

[50] *Id*. at 363.

[51] *Id*. at 364.

[52] *Id*.

[53] *Id*. at 365.

[54] *Id*.

discernible discomfort within the ranges of flexion and extension, tenderness to palpation throughout the bilaterial medial and later joint line, pain with patellar compression bilaterally, and no effusion or warmth bilaterally.[55] As for Plaintiff's cervical and dorsolumbar spine, Dr. Call found no discernible discomfort within the normal ranges of flexion and extension.[56] Based on his review, Dr. Call opined that there were no recommended limitations regarding the number of hours that Plaintiff could sit during a normal eight-hour workday.[57] Plaintiff could stand two hours during a normal eight-hour workday and could also walk for two hours.[58] Plaintiff could lift 20 pounds frequently and 30 pounds occasionally.[59] Bending, stooping, squatting, crouching, and/or crawling would be feasible occasionally.[60] Dr. Call also recommended a cane be used frequently as an assistive device.[61]

Around April 2021, Plaintiff began taking Symbicort for sleep apnea, reporting a 30% improvement in her breathing with the medication, and Plaintiff began using a CPAP machine, reporting improved sleep quality.[62] In May 2021, Plaintiff was noted to have no tenderness or edema.[63] In June 2021, Plaintiff was advised to use compression socks and to keep her legs

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at 367.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 387.

[63] *Id.* at 470–73.

elevated due to her peripheral neuropathy and edema.[64] She exhibited a normal range of motion and strength, as well as no tenderness with 1+ edema in the bilateral lower extremities.[65] In July 2021, Plaintiff felt she was doing well with the CPAP and denied snoring, headaches, or daytime sleepiness.[66] Her breathing was stable overall, though she had noticed issues due to her allergies.[67] A few weeks later, Plaintiff reported that her dyspnea was worsening, causing her headaches, chest pressure, and pain.[68] The treating physician noted the presence of edema bilaterally at a severity of 1+.[69]

Plaintiff also attended physical therapy for the pain in her feet beginning in November 2021 and continuing into February of 2022.[70] It was noted that her ankles were collapsing and that she had an antalgic gait.[71] The skin on the ankles and feet was dry, and there was pitting edema in her lower extremities, especially in her calves and ankles.[72] However, she had functional range of motion and a 5/5 strength grade in both ankles.[73] Her sensation to touch in her calves, ankles, and feet was intact.[74]

---

[64] *Id*. at 466.

[65] *Id*. at 467.

[66] *Id*. at 392.

[67] *Id*.

[68] *Id*. at 397.

[69] *Id*. at 399.

[70] *Id*. at 506–22.

[71] *Id*. at 517.

[72] *Id*.

[73] *Id*.

[74] *Id*.

In December 2021, Jasmine Reid, PA-C ("PA-C Reid") completed a treating source statement for Plaintiff.[75] PA-C Reid began seeing Plaintiff quarterly beginning in August of 2019.[76] Plaintiff's diagnoses were diabetes with peripheral neuropathy, bilateral osteoarthritis of knees, dorsalgia, shortness of breath on exertion, edema, hypertension, and morbid obesity.[77] According to PA-C Reid, Plaintiff's prognosis was chronic declining.[78] Significant clinical findings and objective signs included a lumbar x-ray showing severe degenerative changes and a knee x-ray showing degenerative change.[79] PA-C Reid opined that Plaintiff could lift less than ten pounds, stand or walk less than two hours, and sit for less than two hours during a standard eight-hour workday.[80] PA-C Reid also opined that Plaintiff would be twenty percent or more of the workday and would be less than fifty percent efficient.[81] PA-C Reid found that Plaintiff would be unable to work on a full-time sustained basis due to Plaintiff's morbid obesity having caused severe joint pains, neuropathy, and shortness of breath.[82]

In December 2021, Plaintiff reported that she experienced such severe pain with standing that she must change positions every ten minutes.[83] She stated that she was using a cane to move

---

[75] *Id*. at 428–29.

[76] *Id*. at 428.

[77] *Id*.

[78] *Id*.

[79] *Id*.

[80] *Id*.

[81] *Id*. at 428–29.

[82] *Id*. at 429.

[83] *Id*. at 438.

around and that she had developed severe swelling in her lower legs.[84] The treating physician noted limited range of motion in both knees, normal strength, no tenderness, and 2+ edema.[85] Plaintiff also had limited sensation in her lower extremities. Plaintiff was prescribed Lasix for her edema.[86] Additionally, imaging of Plaintiff's spine showed severe degenerative disc disease at L2-L3 and moderate degenerative disc disease at L3-L4, as well as multilevel degenerative face arthropathy.[87]

In January 2022, Plaintiff stated that her peripheral neuropathy had improved once the edema had lessened from Lasix use.[88] The treating physician discussed increasing Plaintiff's Gabapentin dosage, which Plaintiff was taking for peripheral neuropathy, but Plaintiff did not wish to do so.[89] Plaintiff had normal of motion and strength, as well as no tenderness with 2+ edema.[90] Her back had no tenderness to palpation.[91] At another appointment, Plaintiff presented with diffuse body pain that was worst in her knees and with neuropathy caused by diabetes in her feet.[92] She reported that walking aggravated her pain greatly but sitting relieved the pain.[93] Plaintiff's gait was described as slow and cautious, and she required the use of a cane.[94]

---

[84] *Id*.

[85] *Id*.

[86] *Id*. at 437.

[87] *Id*. at 595.

[88] *Id*. at 431.

[89] *Id*.

[90] *Id*. at 432.

[91] *Id*.

[92] *Id*. at 453.

[93] *Id*. at 457.

[94] *Id*.

Plaintiff's lower extremities showed no visible abnormalities.[95] Her reflexes in the lower extremities were diminished but symmetric, and the neurological sensation in the lower extremities was normal to light touch.[96]

In early February 2022, Plaintiff was seen for knee pain.[97] Her gait was normal, and she did not require the use of an assistive device.[98] She was prescribed tramadol to help mitigate the pain.[99] Later that month, Plaintiff continued to complain of gradually worsening pain.[100] Among other medications, Plaintiff was taking Gabapentin twice daily, but she stated that she had not noticed any changes.[101] She was also taking Metanx daily and felt that helped her foot pain.[102] Plaintiff was noted to be currently utilizing a cane and a walker,[103] but she was able to enter the room without assistance.[104] The motor strength of Plaintiff's right and left knee flexors and extensors, as well as her right and left ankle dorsi flexion, was graded five out of five.[105] She had diminished reflexes in the biceps, triceps, brachioradialis, patellar, and Achilles.[106] Plaintiff's

---

[95] *Id*.

[96] *Id*. at 458.

[97] *Id*. at 447.

[98] *Id*.

[99] *Id*. at 450.

[100] *Id*. at 440.

[101] *Id*.

[102] *Id*.

[103] *Id*.

[104] *Id*. at 444.

[105] *Id*. at 444–45.

[106] *Id*. at 445.

skin temperature was normal, and her vibratory sensation and light touch was intact.[107] However, she had decreased vibration in the big toes and ankles.[108] Plaintiff's gait was described as steady with normal steps, base, arm swing and turning.[109] Plaintiff demonstrated normal heel-toe and tandem walking, and the Romberg's test was negative.[110]

In March 2022, Plaintiff's pain continued.[111] She was experiencing morning stiffness.[112] There was tenderness to palpation in the right medial and lateral knee joint but no tenderness in the left knee joint or either ankles.[113] Swelling was absent.[114] In July 2022, Plaintiff stated that she had not tried much of elevating her feet or wearing compression socks for relief.[115] Upon examination, she he had no tenderness and 2+ to 3 edema depending on the area palpated.[116] In August 2022, Plaintiff stated that her edema had improved with Lasix.[117] Plaintiff had no tenderness with 1+ to 2 edema.[118]

---

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.* at 535.

[113] *Id.* at 539.

[114] *Id.*

[115] *Id.* at 630.

[116] *Id.* at 631.

[117] *Id.* at 622.

[118] *Id.* at 623.

In March 2023, Plaintiff was given a prescription for a cane and a walker.[119] Plaintiff stated that her edema is worse at night, but it was noted that she cannot tolerate elevating her legs due to knee pain.[120] She had no tenderness and 2+ pitting edema in the lower extremities.[121]

C.    HEARING TESTIMONY

Before the ALJ, Plaintiff testified that she was born in 1958 and is a college graduate.[122] She worked for ten years doing billing-related calls, running credit cards, and acting as an intermediary between clinics and clients, who were largely businesses.[123] Plaintiff stated that in 2017, she was having trouble with her knees such that she would be in pain after sitting all day.[124] She was also having trouble with her eyes from looking at a computer screen.[125] She felt she could no longer work, so when she moved, she didn't try to find another job.[126]

Plaintiff testified that both of her knees have been bone on bone for around the past ten years.[127] Due to Plaintiff being severely overweight, knee surgery is not feasible.[128] Plaintiff stated that she started getting edema, causing her ankles to swell and turn black.[129] Plaintiff also

---

[119] *Id.* at 657.

[120] *Id.* at 658.

[121] *Id.* at 659.

[122] *Id.* at 43.

[123] *Id.* at 44–50.

[124] *Id.* at 50.

[125] *Id.*

[126] *Id.*

[127] *Id.* at 51.

[128] *Id.*

[129] *Id.*

has neuropathy in her feet and experiences numbness and needling sensations.[130] Plaintiff

testified that her back pain has gotten progressively worse to the point that she has trouble

sleeping and must sit in her recliner much of the time.[131] However, due to her back pain, Plaintiff

must also get up and move to sit in other places around her house.[132] It is hard to lose weight as

moving is difficult.[133]

Plaintiff stated that she generally wakes up naturally, then showers, dresses, and

otherwise gets ready for the day.[134] She has a walker in her kitchen where she sits to have

lunch.[135] Then, Plaintiff sits in her recliners where she reads, works on her computer, or plays on

her phone.[136] At night, she watches TV with her husband.[137] She also trims her cat's nails and

tries to do crafts, though she is currently having trouble with her hand that makes crafting

difficult.[138] Plaintiff used to make jewelry, which she sold on eBay.[139] She likes to make her own

cards.[140] Plaintiff testified that she leaves the house occasionally to go to medical appointments

and to eat at restaurants.[141]

---

[130] *Id*. at 52.

[131] *Id*.

[132] *Id*.

[133] *Id*. at 53.

[134] *Id*. at 54.

[135] *Id*.

[136] *Id*.

[137] *Id*.

[138] *Id*. at 55.

[139] *Id*.

[140] *Id*.

[141] *Id*. at 54.

D.      THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's

claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since February 14, 2019, the alleged onset date, through her date last insured of

December 31, 2022.[142] At step two, the ALJ found that Plaintiff suffered from the following

severe impairments: diabetes mellitus, peripheral neuropathy, obesity, and disorders of the

skeletal spine.[143] The ALJ found a number Plaintiff's impairments, including hyperlipidemia,

essential hypertension, asthma, osteoarthrosis and allied disorders, and sleep-related breathing

disorders, non-severe.[144] At step three, the ALJ determined that Plaintiff did not meet or equal a

listed impairment.[145] At step four, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain

limitations:

> Lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for
> 6 hours, standing for 2 hours with an alternate sit/stand at will and walking for 2
> hours; and she would need to use a cane for all ambulation. The claimant can push
> and/or pull as much as she can lift and/or carry. The claimant can climb ramps and
> stairs occasionally but never climb ladders, ropes, or scaffolds. She can stoop,
> kneel, crouch and crawl occasionally.[146]

---

[142] *Id.* at 12.

[143] *Id.*

[144] *Id.* at 13.

[145] *Id.* at 13–15.

[146] *Id.* at 15–26.

Then, the ALJ concluded that through the date last insured, Plaintiff was capable of performing past relevant work as an Accounts Receivable Clerk.[147] Therefore, the ALJ found that Plaintiff was not disabled.[148]

### III. DISCUSSION

Plaintiff raises three issues in her brief: (1) whether the ALJ erred by failing to include the need to elevate the legs as a limitation in the assessment of Plaintiff's RFC, (2) whether the ALJ erred in finding Plaintiff's osteoarthritis to be a non-severe impairment, and (3) whether the ALJ erred by failing to make sufficient factual findings and improperly relying on the vocational expert's ("VE") findings at step four. Defendant argues that substantial evidence supports the ALJ's assessment of Plaintiff's RFC; that the ALJ's finding Plaintiff's osteoarthritis non-severe would be, if an error, a harmless one; and that substantial evidence supports the ALJ's step-four findings.

### A.    ELEVATION OF THE LEGS

Plaintiff asserts that the ALJ should have discussed and accounted for Plaintiff's alleged need to elevate her legs due to her edema in the RFC assessment. Defendant argues that the ALJ discussed evidence in the record that belied Plaintiff's contention that she needed to elevate her legs and that the ALJ's RFC assessment was supported by substantial evidence.

Here, the ALJ acknowledged Plaintiff's testimony that she has to put her feet up on account of her edema[149] but found that Plaintiff's allegations were not entirely consistent with

---

[147] *Id.* at 26–27.

[148] *Id.* at 27.

[149] *Id.* at 17.

the record as a whole.[150] In support, the ALJ pointed to several instances in the medical record indicating improvement of Plaintiff's edema and normal findings despite some edema. On January 3, 2022, Plaintiff stated that her edema had lessened from her Lasix use, improving her peripheral neuropathy.[151] Although Plaintiff was noted to have 2+ edema on this date, she maintained a normal range of motion and strength and had no tenderness.[152] The rest of Plaintiff's physical exam was generally unremarkable,[153] and Plaintiff stated that she did not want to increase her Gabapentin usage.[154] On March 23, 2022, Plaintiff's lower extremities showed no visible abnormalities, and swelling was absent.[155] On August 11, 2022, Plaintiff had 1+ to 2 edema but, again, had normal range of motion and strength and no tenderness.[156] Plaintiff also stated that her edema had improved as a result of her increasing her Lasix.[157] On October 7, 2022, Plaintiff was found to have no lower extremity edema, and her extremities showed normal color and warmth.[158] On December 31, 2022, Plaintiff's date last insured, Plaintiff's examination findings were generally unremarkable, with the exception of tenderness and edema in the

---

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id.* at 18.

[155] *Id.* at 19.

[156] *Id.*

[157] *Id.*

[158] *Id.* at 20–21.

bilateral lower extremities.[159] On March 16, 2023, Plaintiff had 2+ pitting edema, but still maintained normal range of motion and strength and had no tenderness.[160]

The ALJ's discussion is in accord with the record as a whole. Plaintiff contends that her need to elevate her legs was repeatedly discussed by her providers, but the record does not reflect this. Plaintiff cites to only two treatment notes to support her assertion. On June 3, 2021, it was recommended that Plaintiff elevate her legs.[161] However, while Plaintiff claims she was again advised to keep her legs elevated in March 2023, this misstates the record. At that visit, it was noted that Plaintiff cannot tolerate elevating her legs due to her knee pain.[162] The only other reference to elevating the legs in the medical record occurred in July 2022, where Plaintiff stated that she had not tried much of elevating her feet.[163] Plaintiff is correct that the ALJ did not discuss this evidence in his assessment, but "[t]he ALJ is not required to discuss every piece of evidence,"[164] and this evidence is not such that a reasonable mind could not view it as supporting a decision that elevating the legs was not a necessary limitation. Indeed, none of the state agency physical consultants nor the treating physicians included a limitation of elevating the legs in their assessments. The ALJ is not required to include limitations in the RFC assessment that are not supported by the record as a whole.[165]

---

[159] *Id*. at 21.

[160] *Id*. at 22.

[161] *Id*. at 466.

[162] *Id*. at 658.

[163] *Id*. at 630.

[164] *Clifton*, 79 F.3d at 1009–10.

[165] *See Qualls*, 206 F.3d 1372 (ALJ was not required to include in his RFC assessment limitations that were not supported by the medical record).

Therefore, the ALJ's determination of Plaintiff's RFC with regard to Plaintiff's edema is supported by substantial evidence, and the ALJ did not err in failing to include the need to elevate the legs as a limitation in Plaintiff's RFC.

B.    NON-SEVERE IMPAIRMENT

Plaintiff argues that the ALJ's finding Plaintiff's osteoarthritis of the knees to be a non-severe impairment at step two was in error due to the record's showing repeated diagnoses of osteoarthritis, imaging reflecting the condition, and ongoing complaints of pain. However, even if the ALJ did err at step two, any error is harmless because the ALJ found other severe impairments and continued the analysis.[166] "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"[167] Since the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the analysis, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."[168] Such is the case here.

---

[166] *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

[167] *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987)).

[168] *Id.*

In determining Plaintiff's RFC, the ALJ, as required,[169] considered all of Plaintiff's medically determinable impairments, including those that were not severe.[170] Plaintiff asserts that the ALJ's RFC assessment does not clearly account for the limitations caused by Plaintiff's osteoarthritis, but Plaintiff does not argue that any additional limitations would be required due to Plaintiff's osteoarthritis, and the record shows that the ALJ did account for the impairment. In the RFC assessment, the ALJ acknowledged Plaintiff's testimony that her knees had been bone-on-bone for ten years,[171] that Plaintiff at times utilized a cane and/or walker,[172] that there was tenderness with palpation of the right medial and lateral knee joint in January 2022,[173] and that Plaintiff complained of knee pain such that she could not walk for more than a few minutes.[174] The ALJ cited that during Plaintiff's physical examination with Dr. Call, there was mild discernable discomfort in the knees within flexion and extension ranges, as well as tenderness to palpation throughout the medial and lateral joint lines with crepitus throughout and pain with patellar compression bilaterally.[175] The ALJ noted that Dr. Call diagnosed Plaintiff with moderate to severe osteoarthritis of the knees, which was in accordance with Plaintiff's x-rays.[176]

---

[169] *Id.* ("[A]t step four, an ALJ must 'consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC].'" (alterations in original) (quoting 20 C.F.R. § 404.1545(e), 416.945(e))).

[170] R. at 13 ("[T]he undersigned has considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.").

[171] *Id.* at 18.

[172] *Id.* at 16, 22.

[173] *Id.* at 18.

[174] *Id.* at 20.

[175] *Id.* at 21.

[176] *Id.*

The ALJ also noted that Plaintiff claimed in March 2023 that Tylenol and Tramadol were not adequately controlling her knee pain.[177]

Based on this evidence supporting Plaintiff's knee pain, and other evidence, the ALJ found that Plaintiff's impairments, including her osteoarthritis, caused some limitation in her ability to perform basic work activities, and the ALJ accounted for this by limiting Plaintiff to a less than full range of light exertional work with additional exertional limitations, including postural limitations to account for all of Plaintiff's impairments. Nonetheless, despite evidence demonstrating Plaintiff's suffering, the ALJ found that the record established that Plaintiff retained the capacity to perform many basic activities associated with work. Relevant to Plaintiff's osteoarthritis, the ALJ noted that Plaintiff had a normal range of motion and strength and no tenderness on January 3, 2022, August 11, 2022, and March 16, 2023;[178] that Plaintiff entered the room without assistance and had a steady gait on February 22, 2022;[179] and that Plaintiff had a normal gait, did not require an assistive device, and had no tenderness with palpitation of the left medial and lateral knee joint on March 23, 2022.[180] The ALJ noted that Plaintiff arose spontaneously and unaided from a seated position, did not appear uncomfortable getting on and off the examination table, and mobilized unaided throughout the exam with Dr. Call.[181] Additionally, the ALJ noted that the x-rays of Plaintiff's knees showed no evidence of

---

[177] *Id.* at 22.

[178] *Id.* at 17, 19, 22.

[179] *Id.* at 18.

[180] *Id.* at 19.

[181] *Id.* at 20.

acute bony pathology.[182] To the extent Plaintiff argues that the ALJ's RFC assessment is in error regarding Plaintiff's osteoarthritis, the Court finds that substantial evidence supports the ALJ's findings.

Furthermore, Plaintiff contends that the ALJ's failure to find Plaintiff's osteoarthritis to be a severe impairment is not harmless error because this failure prevented the impairment from being evaluated at step 3 under Listing 1.18, which Plaintiff asserts her impairment meets. This argument is unpersuasive because the ALJ's findings at step four of the analysis "conclusively negate the possibility of any finding that [Plaintiff] is presumptively disabled under the pertinent listing."[183] The ALJ found Plaintiff capable of sitting for six hours, standing for two hours with an alternate sit/stand at will, and walking for two hours. Additionally, the ALJ found that Plaintiff can climb ramps and stairs occasionally and can stoop, kneel, crouch and crawl occasionally. "[T]he purpose of the listings is to identify impairments 'severe enough to prevent a person from doing any gainful activity,'"[184] and the ALJ's findings regarding the functionality of Plaintiff's lower extremities show that Plaintiff is capable of performing gainful activity. "In other words, the ALJ's findings do not approach the level of severity required to render [Plaintiff] presumptively disabled"[185] under Listing 1.18.

In short, even if the ALJ erred in finding Plaintiff's osteoarthritis to be a non-severe impairment, the error is harmless, and remand is not required on this ground.

---

[182] *Id.* at 21.

[183] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005).

[184] *Id.* at 734 (quoting 20 C.F.R. § 404.1525(a)).

[185] *Id.*

C.      PAST RELEVANT WORK

Plaintiff contends that the ALJ erred by finding that Plaintiff could perform her past relevant work at step four because (1) the ALJ failed to make sufficient findings at phases two and three of step four and (2) the VE misclassified Plaintiff's position. Defendant argues that the ALJ was not required to make more extensive findings and thus the ALJ's determination at step four that Plaintiff was not disabled was supported by substantial evidence.

"Step four of the sequential analysis . . . is comprised of three phases."[186] First, the ALJ must determine a claimant's RFC.[187] Second, the ALJ "must determine the physical and mental demands of the claimant's past relevant work."[188] Third, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."[189]

"To make the findings required by phase two of step four, an ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations."[190] Here, Plaintiff alleges that the ALJ failed to make any findings about the demands of Plaintiff's past relevant work. Plaintiff also asserts that the ALJ improperly deferred at phase three to the VE's testimony that Plaintiff could perform her past relevant work. Plaintiff cites *Winfrey* to support her arguments.

---

[186] *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

[187] *Id.*

[188] *Id.*

[189] *Id.*

[190] *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) (internal citation omitted).

While *Winfrey* does caution against the total delegation to a VE of the ALJ's fact finding responsibilities at step four, the ALJ may rely on the VE's testimony to support his own findings at phases two and three of the analysis.[191] *Winfrey* "is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability. Rather, its concern is with the development of a record which forms the basis of a decision capable of review."[192] In *Winfrey*, "the ALJ made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy."[193] "When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review."[194]

This case is unlike *Winfrey* because, contrary to Plaintiff's assertions, the record is not devoid of evidence regarding Plaintiff's past relevant work. Here, the ALJ found that based on Plaintiff's Work History Report and the VE's classification, Plaintiff worked as an Accounts Receivable Clerk.[195] The ALJ identified that this job corresponded to DOT 216.482-010 and was

---

[191] *See Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847–48 (finding that ALJ adequately discharged his step four responsibilities when the ALJ cited the VE's testimony with approval to support his own findings).

[192] *Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002).

[193] *Winfrey*, 92 F.3d at 1024.

[194] *Id.* at 1025.

[195] R. at 26.

light[196] and SVP 5.[197] The ALJ cited with approval the VE's testimony that if a hypothetical individual had the Plaintiff's RFC, such a hypothetical individual could perform Plaintiff's past relevant work as an Accounts Receivable Clerk, and then the ALJ found that Plaintiff could perform her past relevant work as generally and actually performed.[198] The ALJ also found the VE's testimony consistent with the information contained in the DOT.[199] During the hearing, the ALJ questioned the VE about individuals with the limitations Plaintiff might be found to have and whether those individuals could perform Plaintiff's past relevant work both as generally and actually performed.[200] Such analysis is sufficient on the ALJ's part to satisfy the requirements of step four, phases two and three.[201]

Relatedly, Plaintiff contends that the VE misclassified Plaintiff's past relevant work as an Accounts Receivable Clerk. According to Plaintiff, the DOT position does not properly describe Plaintiff's work because Plaintiff did not perform any accounting, and Plaintiff points to other DOT positions that she feels better describe her past relevant work. In her Reply, Plaintiff seems to suggest that the VE could not have understood Plaintiff's position because the ALJ did not do

---

[196] The ALJ's identifying the Accounts Receivable Clerk position as light is in error. The DOT indicates, and the VE testified, that this position is sedentary. However, this error is harmless. The ALJ assessed Plaintiff's RFC as being capable of performing light work with some limitations, and those limitations do not include the inability to sit for long periods of time or the loss of fine dexterity. If Plaintiff can perform such light work, she can perform sedentary work. *See* 20 C.F.R. § 404.1567(b).

[197] R. at 26.

[198] *Id.* at 27.

[199] *Id.*

[200] *Id.* at 59–61.

[201] *See Adcock*, 748 F. App'x at 847–48.

the necessary fact finding, thus leading to the misclassification. There are several issues with these arguments.

First, the record shows that Plaintiff testified regarding her past relevant work such that the VE had a sufficient factual basis upon which to opine.[202] Indeed, Plaintiff cites to her hearing testimony describing her past work and then uses this testimony to identify other DOT positions Plaintiff finds more appropriate.

Second, the argument, "ignores the very reason for soliciting the opinion of a vocational expert."[203] "Neither the ALJ, this court, plaintiff, nor plaintiff's counsel are experts in vocational matters with the expertise to interpret the DOT contrary to the interpretation given by the VE."[204] Plaintiff's argument that the Accounts Receivable Clerk does not align with her past relevant work because she did not do accounting work is not at all self-evident from the DOT's description of the job, and the argument is based on Plaintiff's personal, lay interpretation. Plaintiff had the opportunity to cross-examine the VE at the hearing and in doing so made no challenge to either the VE's expertise or the VE's classification of Plaintiff's job. "This court, no more than plaintiff, is not in any position to question the vocational expert's classification of plaintiff's past relevant work on this basis."[205]

---

[202] R. at 45–50.

[203] *Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1055 (D. Colo. 2015).

[204] *Thongleuth v. Astrue*, No. 10-1101-JWL, 2011 WL 1303374, at *18 (D. Kan. Apr. 4, 2011); *see also Spencer v. Comm'r of Soc. Sec.*, No. 1:13-cv-454, 2014 WL 4351418 at *4 (S.D. Ohio Sept. 2, 2014) ("A vocational expert is uniquely qualified to determine how jobs are categorized or classified in the [Dictionary of Occupational Titles].").

[205] *Perotin*, 110 F. Supp. 3d at 1056.

Therefore, because the ALJ's analysis at step four, phases two and three, was sufficient and because this Court cannot supplant the VE's expert testimony for Plaintiff's lay opinion, substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work. Remand on this issue is not required.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 15th day of July, 2025.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge